**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DUANE E. NORMAN, SR.,<br>on behalf of himself and all others similarly situated, | |
| *Plaintiff*, | Civil Matter No. _____ |
| v. | **CLASS ACTION COMPLAINT** |
| TRANS UNION, LLC, | **TRIAL BY JURY DEMANDED** |
| *Defendant*. | |

## I.      PRELIMINARY STATEMENT

1.      This is a consumer class action brought for redress of violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681x ("FCRA"), by Defendant Trans Union, LLC, a consumer reporting agency ("CRA").

*Consumer Reporting "Inquiries"*

2.      An "inquiry" is a record that identifies the person or business that obtained a consumer's credit report from a CRA, that person or business's address, and the date on which the person or business acquired the consumer's credit report.

3.      Because inquiries identify the persons and businesses *from whom* the subject of a credit report has sought credit and *how often* that consumer seeks credit, they are a part of the consumer's credit history and included in that consumer's credit report.

4.      Inquiries generally have a negative impact on a consumer's credit score (*i.e.*, the more inquiries, the lower the score) because scoring programs consider consumers who make multiple applications for credit riskier than consumers who do not.

5.      Like other items on consumer reports, inquiry information is often inaccurate, and inquiries may appear on a consumer's credit report notwithstanding the fact that the consumer did

not actually seek credit. This can occur when, for example, a CRA provides a consumer's report to a creditor who requested a report on a different person who may have a similar name or in cases of fraud or unauthorized access.

6.      Including inaccurate inquiries or inquiries that do not belong to the consumer who is the subject of the credit report misrepresent the consumer's true credit history, unfairly lowering the consumer's credit score.

*Consumers' Rights to Dispute Information in Their Credit Files*

7.      To combat the problems noted above, Congress included a mechanism in the FCRA by which consumers may dispute inaccurate or incomplete information in their credit files.

8.      When a consumer notifies a CRA that he or she disputes "the completeness or accuracy of *any item* of information contained in [his or her] file," the CRA must "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file" within 30 days of receiving the consumer's dispute. 15 U.S.C. § 1681i(a)(1)(A) (emphasis added).

9.      As part of the reinvestigation, a CRA must "provide notification of the dispute to any person who provided any item of information in dispute," and the notice must "include all relevant information regarding the dispute that the agency has received from the consumer . . . ." 15 U.S.C. § 1681i(a)(2)(A).

10.     Contacting the source of the disputed information is critical to a reasonable reinvestigation. When, for example, the wrong consumer's report was provided to the source of the disputed information, the source may know it received a report pertaining to a consumer who is not the person with whom it was dealing. CRAs can also compare the identifying information

of the consumer whose report was in fact provided with the identifying information in the possession of the source who requested the credit report.

*The Instant Matter*

11.     This case is about Trans Union's failure to fulfill its statutory duties with respect to consumer disputes of inquiry information.

12.     Trans Union does not reinvestigate disputed inquiries; does not notify the source of the disputed inquiry about the consumers' disputes of the information; does not provide the source with all the relevant information about the dispute; and does not delete disputed inquiries that it cannot verify.

13.     Moreover, rather than complying with the FCRA, Trans Union attempts to steer consumers who dispute inquiry information toward its proprietary identity theft protection products from which Trans Union derives substantive profits.

14.     These failures not only violate consumers' FCRA rights to dispute described above, they also undermine the accuracy of information within consumer reports because consumers often notice inaccurate information of which the reporting CRA is unaware. The FCRA's dispute procedure is the *singular* method (outside of litigation) by which consumers can correct errors in their credit files.

15.     Trans Union has violated the requirements of FCRA sections 1681i(a)(1) and (2) by failing to reinvestigate disputed inquiries and failing to notify the source of the inquiry about the consumer's dispute. As a result, Trans Union harmed Plaintiff and, upon information and belief, thousands like him across the United States, and undercut the healthy functioning of the consumer credit system by providing inaccurate and misleading credit history information about consumers to potential creditors and service providers.

## II.   JURISDICTION *and* VENUE

16.     This Court has federal question jurisdiction pursuant to 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

17.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Trans Union can be found in this District and regularly sells its products and services in this District.

## III.   PARTIES

18.     Plaintiff Duane E. Norman, Sr. ("Norman") is a natural person who resides in the Commonwealth of Pennsylvania. He is a "consumer" as defined by FCRA section 1681a(c).

19.     Defendant Trans Union is a limited liability company that regularly conducts substantial business in the Commonwealth of Pennsylvania and which has a place of business in Crum Lynne, Pennsylvania. It is also a "consumer reporting agency" ("CRA") as defined by FCRA section 1681a(f).

## IV.   FACTUAL ALLEGATIONS

*Norman Learns of a Third-Party's
Unauthorized Access to His Credit Report*

20.     On February 15, 2018, Norman received a phone call from a telemarketer promoting the home security products and services of Safe Home Security, Inc. ("Safe Home").

21.     Norman's initial interest in Safe Home soured when the telemarketer stated that Safe Home would need to obtain his credit report before setting up a home consultation.

22.     Norman refused, emphatically stating that he did not authorize Safe Home to obtain his credit report.

23.     Nevertheless, later that day, Safe Home obtained his credit report from Trans Union and as a result, an inquiry identifying Safe Home appeared in Norman's Trans Union credit file.

24.     Norman learned that Safe Home had obtained his credit report from Trans Union despite his adamant refusal.

*Norman Disputes the Unauthorized Inquiry to Trans Union and*
*Trans Union Fails to Reinvestigate His Disputes*

25.     Thereafter, Norman contacted Trans Union by telephone to dispute the Safe Home inquiry and request its removal from his credit file.

26.     In response to Norman's telephonic dispute, Trans Union did not conduct any reinvestigation of Norman's dispute of the Safe Home inquiry, did not notify Safe Home of Norman's dispute, and did not delete the Safe Home inquiry from Norman's credit file.

27.     Instead, the Trans Union representative with whom Norman spoke told him to contact Safe Home himself.

28.     On or about May 17, 2018, Norman obtained a copy of his Trans Union personal credit report and learned that the unauthorized Safe Home inquiry was still on it.

29.     On or about July 12, 2018, Norman sent a letter to Trans Union disputing the unauthorized Safe Home inquiry and requesting its removal from his credit file.

30.     Trans Union received Norman's letter, but did not conduct a reinvestigation of his dispute, notify Safe Home of the dispute, or remove the inquiry from Norman's credit file.

31.     Instead, on or about August 13, 2018, Trans Union sent Norman a form letter that offered a generic "Explanation of the Inquiries on Your Credit Report" and stated, in part, that:

> The inquiries listed on your credit report are a record of the companies that obtained your credit information. The identity of each company by trade name and contact information is provided. All inquiries remain on your credit report for two years. Credit information may be requested only for the following permissible purposes: credit transactions, employment consideration, review or collection of an existing account or other legitimate business need, insurance underwriting, government licensing, rental dwelling, or pursuant to a court order. Your written authorization may not be required to constitute permissible purpose. If you believe that an inquiry on your credit report was made without permissible purpose, then you may wish to contact the creditor directly, by phone or in

writing, regarding its purpose. Please note that your specific consent to the release of your credit information is not necessary for a permissible purpose to exist.

32.     On or about August 30, 2018, Norman sent another letter to Trans Union clarifying that Safe Home had no permissible basis for obtaining his credit report and requesting, once again, that the related inquiry be removed from his Trans Union credit file.

33.     Trans Union received Norman's second letter, but did not conduct a reinvestigation of his dispute, notify Safe Home of the dispute, or remove the inquiry from Norman's credit file.

34.     Instead, on or about September 6, 2018, Trans Union sent Norman another form letter, *identical* to the form letter it had sent him on August 13, 2018.

35.     As a direct and proximate result of Trans Union's false statements and refusal to reinvestigate his dispute of the Safe Home inquiry, Norman suffered, without limitation, the following injuries:

A.     The continued presence of the Safe Home inquiry on his credit report and corresponding reduction of his credit score;

B.     Deprivation of the information that Trans Union had not reinvestigated his dispute or contacted Safe Home which, at a minimum, would have armed him with additional information concerning his creditworthiness;

C.     Distress from getting the run around from Trans Union concerning his disputes and what Trans Union would actually do to investigate them; and

D.     Lost time and resources expended in connection with making multiple ignored disputes of the Safe Home inquiry to Trans Union and directly contacting Safe Home itself only to learn that it could not help.

*Trans Union Is Aware of Its Duties to*
*Reinvestigate Consumer Disputes*

36.     Trans Union has long been aware of its obligations to reinvestigate inquiry disputes. The plain, unambiguous language of the FCRA requires a reasonable reinvestigation of "the completeness or accuracy of *any item* of information contained in a consumer's file" that is disputed by that consumer. 15 U.S.C. § 1681i(a)(1)(A) (emphasis added).

37.     Regulatory guidance from the Federal Trade Commission further explained a CRA's duty to reinvestigate disputed inquiries or delete them, as follows:

> When a CRA receives a dispute from a consumer alleging that an inquiry that appears in his/her file was not made by a person who had a permissible purpose for obtaining the consumer report, and those allegations are supported by the CRA investigation, the CRA has two options. It may either delete the inquiry as inaccurate, or amend the file to make the item "complete" by reflecting clearly that the inquiry was generated by a party who did not have a permissible purpose to obtain a consumer report on the consumer.

FEDERAL TRADE COMMISSION, *40 Years of Experience with the Fair Credit Reporting Act: An FTC Staff Report with Summary of Interpretations*, 77 (2011) available at https://www.ftc.gov/sites/default/files/documents/reports/40-years-experience-fair-credit-reporting-act-ftc-staff-report-summary-interpretations/110720fcrareport.pdf.

38.     Moreover, the Third Circuit Court of Appeals held, in a decision *against Trans Union*, that CRAs must reinvestigate disputes of *all* information in a consumer's file, even if that information is kept off site with another company but placed on Trans Union credit reports. *Cortez v. Trans Union, LLC*, 617 F.3d 688, 711-13 (3d Cir. 2010).

39.     Other courts of appeals have instructed CRAs to reinvestigate any item that it reports and that a consumer disputes, regardless of the context. *See, e.g., Collins v. Experian Info. Sol's, Inc.*, 775, F.3d 1330, 1335 (11th Cir. 2015); *Morris v. Trans Union Info. Serv's, LLC*, 457

F.3d 460, 466-68 (5th Cir. 2006); *Bryant v. TRW, Inc.*, 689 F.2d 72 (6th Cir. 1982); *Dennis v. BEH-1, LLC*, 520 F.3d 1067 (9th Cir. 2008).

40.     Concerning a CRA's duty to reinvestigate disputes of inquiry information, one court held that:

> More than simply comporting with the plain language of the statute, [requiring reinvestigation of inquiry disputes] best serves to advance the purpose of FCRA's reinvestigation requirements – ensuring the accuracy of the information used by creditors to determine a consumer's creditworthiness …. The interests of consumers and potential creditors are best served by deletion of hard inquiries that [the CRA] itself admits "misstate[ ]" the consumer's credit history. Consumer's credit scores are negatively impacted by fraudulent or inaccurate credit inquiries, and creditors are provided with an inaccurate portrait of the consumer's credit history. The only entity that benefits is [the CRA], which does not have to expend resources reinvestigating disputed credit inquiries.

*Steed v. Equifax Info. Serv's, LLC*, No. 1:14-cv-0437-SCJ, 2016 WL 7888039, at *4 (N.D. Ga. Aug. 31, 2016) (citations omitted).

41.     Trans Union itself acknowledges its obligations to reinvestigate disputed information. In the cover letter it sent to Norman with his May 17, 2018 personal credit report, Trans Union stated, in relevant part:

> As a trusted leader in the consumer credit information industry, TransUnion takes the accuracy of your credit information very seriously. We are committed to providing the complete and reliable credit information that you need to participate in everyday transactions and purchases.
>
> If you believe an item of information to be incomplete or inaccurate, please alert us immediately. We will investigate the data and notify you of the results of our investigation.

42.     Nevertheless, Trans Union, as a matter of policy and standard practice, fails to comply with these legal requirements to which it is subject.

*Trans Union Refuses to Reinvestigate Consumers' Disputes of*
*Inquiry Information for Pecuniary Gain*

43.    Upon information and belief, Trans Union fails to reinvestigate inquiry disputes for at least two reasons, both tied to its bottom line.

44.    First, compliance the FCRA's dispute reinvestigation duties would require Trans Union to expend additional financial and human resources. By ignoring disputes of inquiry information, Trans Union realizes substantial savings.

45.    Second, by ignoring disputes of inquiry information, Trans Union can capitalize on consumers' fears—especially in the wake of the 2017 Equifax data breach[1]—to steer them toward its proprietary identity theft prevention product, "TrueIdentity."

46.    This steering is evidenced by the language of the form letters Trans Union sent to Norman. Both urged him to sign up for TrueIdentity, even though Norman had not mentioned identity theft in his correspondence to Trans Union, as follows:

Want to Do More to Protect Your Info?

We take protecting your identity seriously and we want to offer you these helpful tips you can take going forward:

- keep an eye on your credit. Look for signs of suspicious activity, like unfamiliar accounts or credit checks from companies you've never done business with.

- Be careful on the internet. Use secure passwords on your computer and web accounts. Make sure to change them often.

- Lock your credit report. With a service that offers credit lock, you can keep thieves out of your credit report in a matter of seconds.

---

[1]    The 2017 data breach suffered by one of Trans Union's main competitors, Equifax Information Services, LLC, exposed the personal information of nearly every adult in the United States to unauthorized third parties. *See* FEDERAL TRADE COMMISSION, *The Equifax Data Breach: What to Do* (Sept. 8, 2017) available at https://www.consumer.ftc.gov/blog/2017/09/equifax-data-breach-what-do (last viewed Nov. 7, 2018).

> You can do some of the above on your own, but you can do even more with TrueIdentity. TransUnion created this completely free identity protection service to help everyone with the above key steps. Sign up for True Identity at trueidentity.com/free.

47.     Although advertised as "free" to consumers, upon information and belief, the TrueIdentity product produces substantial profits for Trans Union through advertising and upselling consumers on a "premium" version of the product, which costs $19.95 per month.

48.     Thus, at all times relevant to Plaintiff's claims, Trans Union's conduct as described in the preceding paragraphs was the result of its standard policies and practices adopted in reckless disregard of consumers' rights under the FCRA.

## V.     CLASS ACTION ALLEGATIONS

### *Class Definition*

49.     Norman brings this class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, based on Trans Union's failure to comply with FCRA sections 1681i(a)(1) and (2) and, subject to additional information gained in discovery, seeks to represent the following class:

> During the period beginning two years prior to the filing of this action and through the time of judgment, all persons residing in the United States and its Territories to whom Trans Union sent a letter substantially identical to the letters it sent to Norman.

### *Numerosity*

50.     The class is so numerous that joinder of all members is impracticable. Although the precise number of class members is known only to Trans Union, upon information and belief, Trans Union receives thousands of consumer disputes each day. Accordingly, Plaintiff estimates that the class has thousands of members.

*Commonality*

51.     There are questions of law and fact common to the class that predominate over any questions affecting only individual class members. The principal questions are whether Trans Union violated the FCRA by failing to reinvestigate and contact the source of the disputed inquiry or delete it; and whether its violations were willful.

*Typicality*

52.     Norman's claims are typical of the claims of the class, which all arise from the same operative facts and are based on the same legal theory: a dispute to Trans Union regarding an inquiry, which Trans Union did not reinvestigate or delete as required by 15 U.S.C. § 1681i(a)(1) and (2).

53.     Class members will have received the same or similar form letter that Trans Union sent to Norman and all claims will arise from consumer disputes made within the two years prior to the filing of this action.

*Adequacy*

54.     Norman will fairly and adequately protect the interests of the class. Norman is committed to vigorously litigating this matter and has retained counsel experienced in handling FCRA class actions.

55.     Neither Norman nor his counsel have any interests that might cause them not to vigorously pursue these claims.

*Predomination of Common Questions of Law and Fact*

56.     This action should be maintained as a class action because questions of law and fact common to class members predominate over questions affecting only individual class members.

57.     Trans Union's conduct described in the foregoing paragraphs stems from uniform and standard policies and practices, resulting in common violations of the FCRA.

*Superiority*

58.     A class action is a superior method for the fair and efficient adjudication of this controversy. Class members do not have an interest in pursuing separate actions against Trans Union, as the amount of each class member's individual claim is small compared to the expense and burden of individual prosecution.

59.     Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Trans Union's practices. Concentrating the litigation of all class members' claims in a single forum services the interests of justice and enhances judicial efficiency.

60.     Moreover, management of this action as a class action will not present any likely difficulties because the identity of class members may be ascertained from a ministerial inspection of Trans Union's business records.

61.     The prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members which would establish incompatible standards of conduct for the party opposing the class, as well as a risk of adjudications with respect to individual members which would as a practical matter be dispositive of the interests of class members not parties to the adjudications or substantially impair or impede their ability to protect their rights.

## VI.     CLAIM *for* RELIEF

62.     Norman incorporates the foregoing paragraphs as though set forth at length herein.

63.     Trans Union willfully and negligently failed to comply with the requirements of FCRA sections 1681i(a)(1) and (2) by failing to: (a) reinvestigate the disputed inquiry, notify the source of the inquiry about the dispute, and provide the source with all relevant information Norman provided to Trans Union; or (b) delete the inquiry.

64.     Pursuant to FCRA sections 1681n and 1618o, Trans Union is liable to Norman and all class members for its failure to comply with FCRA sections 1681i(a)(1) and (2) in an amount equal to the sum of (1) statutory damages of up to $1,000 per violation, (2) punitive damages in an amount to be determined by the jury, (3) actual damages in an amount to be determined by the jury, (4) attorney's fees, and (5) costs.

## VII.    PRAYER *for* RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

a.      An order certifying the proposed class under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and his counsel to represent the class;

b.      An order declaring that Defendant's actions are in violation of the FCRA;

c.      Statutory damages in the amount of not less than $100 and not more than $1,000 per violation per class member, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

d.      Actual damages in an amount to be determined by the jury, pursuant to 15 U.S.C. §§ 1681n(a)(1)(A) and 1681o(a)(1);

e.      Punitive damages to be determined by the jury, pursuant to 15 U.S.C. § 1681n(a)(2);

f.      Attorneys' fees and costs, pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(b); and

g.      Such other relief as may be just and proper.

## VIII.   JURY TRIAL DEMAND

65.   Plaintiff demands a jury trial on all claims.

Dated: December 5, 2018                 Respectfully submitted,

DUANE E. NORMAN, *by his attorneys*,

*/s/John Soumilas*
James A. Francis
John Soumilas
FRANCIS & MAILMAN, P.C.
1600 Market Street, 25th Floor
Philadelphia, PA 19103
(T) 215-735-8600
(F) 215-940-8000
jfrancis@consumerlawfirm.com
jsoumilas@consumerlawfirm.com

Cary L. Flitter
Andrew M. Milz
FLITTER MILZ, P.C.
450 N. Narberth Ave., Suite 101
Narberth, PA 19072
(T) 610-266-7863
(F) 610-667-0552
cflitter@consumerslaw.com
amilz@consumerslaw.com